UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 10-CV-61288-COOKE
HONORABLE MARCIA G. COOKE

THE STEPHAN CO.,

    Plaintiff,

vs.

COLGATE PALMOLIVE CO.,

    Defendant.

_____/

## PLAINTIFF THE STEPHAN CO.'S RESPONSE TO DEFENDANT COLGATE PALMOLIVE CO.'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11 AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, The Stephan Co. (hereinafter "Stephan"), hereby responds to and opposes the Defendant Colgate Palmolive Co.'s (hereinafter "Colgate") Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 and Incorporated Memorandum of Law (hereinafter "Rule 11 Motion").

Simply put, Colgate's Motion for Sanctions is improper, baseless and has been filed to harass Stephan and to bully it into dismissing valid and substantial claims, with prejudice.

There is nothing sanctionable with respect to Stephan's First Amended Complaint. The claims alleged in the First Amended Complaint are valid and factually sufficient under law. Colgate's sophisticated counsel should be well aware of the foregoing. Instead, Colgate has engaged in this unnecessary motion practice when the parties should be conducting discovery and mediating this matter.

This is not the first time that Colgate has infringed on Stephan's Wildroot® trademark. Stephan purchased the Wildroot® trademark from Colgate in 1995. On April 7, 2004, Colgate settled

with Stephan over similar claims that Colgate and Colgate Mexico, together, sold product to third parties, knowing that these parties were selling this product to entities in the United States in violation of Stephan's trademark rights. See affidavit of Frank Ferola, attached hereto as Exhibit A. Indeed, Stephan filed a complaint against Colgate in 2003 for trademark infringement of Wildroot®, Case No. 03-22167 in the United States District Court, Southern District of Florida. The parties agreed to a settlement in 2004. In the settlement agreement, "Colgate" is defined as "Colgate-Palmolive Company, its parent corporations, subsidiaries, affiliates.") Ferola Aff, ¶ 6. This definition clearly includes Colgate Mexico, a Colgate affiliate.

The settlement agreement also included a specific provision with regard to possible future infringing sales by Colgate of the Wildroot® product. The settlement agreement provides, in pertinent part as follows:

> 6. If in the future Stephan believes that products intended for distribution and/or sale in Mexico under the WILDROOT trademark are being sold by Colgate into the United States of America ("U.S.") Stephan shall notify Colgate in writing and set forth all details available to Stephan concerning such sales. Colgate will respond in writing to Stephan within then (10) business days from receipt of such notification. Stephan agrees not to initiate any litigation relating to such U.S. sales until said ten-day period has passed.

See Ferola Aff, ¶ 7 & Ex. A.

Stephan provided notice of infringing sales of Wildroot® in several emails to Colgate, which are either attached to Mr. Ferola's affidavit or are attached to this Response as Exhibit B.

As stated in the Ferola affidavit, Stephan became aware that Mexican Wildroot® was being imported into the United States when Stephan received notice from US Customs that it had intercepted a shipment of 600 cases of Mexican Wildroot ® manufactured by Colgate Mexico. A true copy of the email from Frank Ferola to Dennis Hickey dated June 5, 2008 is attached hereto as Exhibit B. This fact was communicated to Colgate in several emails, including the email attached hereto as Exhibit B. In that email, Frank Ferola, President of Stephan, is communicating to Dennis Hickey, an officer of Colgate, regarding the shipment of Mexican Wildroot® stopped at the border. The Ferola affidavit then states all the steps that Stephan took to determine where that product came from, including filing an action in the United States District Court, Southern District of Florida, obtaining Injunctions against the third parties that were responsible, notifying Colgate and serving a subpoena on Colgate to obtain documents regarding the infringement. See Ferola Affidavit, ¶¶ 10-14 & Exs. B, C and D.

When Colgate took no action to end the infringing sales, this law suit was filed. Although, Colgate asserts that Colgate is not the proper party to this action, the settlement agreement, signed by Vice President and Associate General Counsel of Colgate, makes it quite clear that Colgate is a proper party and that litigation such as the within action was contemplated by the parties should infringing activity resume with respect to the sales of Wildroot® Claims to the contrary by Colgate are of no merit.

Despite the settlement, the infringement continues. Stephan has initiated this action to obtain injunctive relief to prevent Colgate and Colgate Mexico's infringing activity.

Stephan v. Colgate Palmolive
Case No.: 10-CV-61288-COOKE

## **STATEMENT OF FACTS**

By way of background, Stephan filed its original Complaint in this matter on July 2, 2010, in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida. The Summons and Complaint were served on Colgate on or about July 9, 2010. Colgate filed a notice of removal to the District Court for the Southern District of Florida on July 23, 2010. On August 27, 2010, Colgate filed a Motion to Dismiss Stephan's Complaint.

In response to Colgate's Motion to Dismiss, Stephan filed its First Amended Complaint on or about September 29, 2010 and Colgate <u>agreed</u> to the entry of an Order with Colgate consenting to the filing of the First Amended Complaint, which was deemed filed on October 19, 2010. In fact, Colgate drafted the Joint Motion, which was filed on October 8, 2010. Notwithstanding the foregoing, Colgate now moves for Rule 11 sanctions against Stephan for filing its First Amended Complaint although <u>Colgate agreed to its filing</u> by Agreed Order. Colgate had the First Amended Complaint in its possession for ten days, had ample time to review it, and consented to its filing. Colgate cannot now move for Rule 11 sanctions on the very pleading that it agreed Stephan could file. This reason alone should be sufficient to defeat Colgate's motion for sanctions.

Moreover, notwithstanding Colgate's assertions to the contrary, Stephan's First Amended Complaint is factually sufficient as it stands. It includes allegations that Colgate had first hand knowledge of the alleged infringement by correspondence sent to it by Stephan on April 27, 2009 (a copy of which is attached to the Affidavit of Frank Ferola filed with this response, as Exhibit A). Further, it has added ORGANIZACION SAHUAYO, S .A. DE C.V (hereinafter "SAHUAYO") as a party. The facts included in the First Amended Complaint, include the following:

1. Stephan acquired the trademark rights to the Wildroot® trademark in the U.S., including certain business assets and accompanying goodwill, from Colgate on or about January 1, 1995 and Stephan currently uses the Wildroot® trademark in commerce in the U.S. (See First Amended Complaint, Docket Entry 23, (hereinafter "Complaint") ¶ 7.

2. The Wildroot® trademark is distinctive and has been used in connection with the sale of hair care products by Stephan's predecessor since at least 1932. (See Complaint, ¶ 14).

3. The Wildroot® trademarks and the goodwill associated therewith are of inestimable value to Stephan. (See Complaint, ¶ 15).

4. Defendant Colgate sold the U.S. trademark rights in Wildroot®, together with certain business assets and the accompanying goodwill, to Stephan on or about January 1, 1995. (See Complaint, ¶ 16).

5. At the time of the sale, Colgate retained ownership rights to the Wildroot® trademark in Mexico and expressly or implicitly agreed that it had no rights to sell products bearing the Wildroot® trademark in the U.S. (See Complaint, ¶ 17).

6. Colgate has sold and continues to sell a product bearing the Wildroot® trademark in Mexico. (See Complaint, ¶ 18).

7. The Wildroot® product manufactured by Colgate for distribution by Colgate in the Mexican market is materially different from the genuine Wildroot® product sold by Stephan in that the packaging and labels are different, containing non-English

language wording and instructions, and the product formulas are different as well. (See Complaint, ¶ 19).

8. Stephan subsequently discovered that several distributors and groceries, MEXICAN SUPERMARKET, INC., IMPORT MEX DISTRIBUTORS, INC., SECOBASA MEXICAN GROCERIES, INC. and SOUTH TEXAS GROCERY, LLP, were buying Wildroot® from wholesale suppliers in Mexico and selling Wildroot® in the United States and in this District, illegally importing Colgate's Wildroot® product intended for sale in the Mexican market into the U. S. for resale by certain U.S. retail outlets, including Mexican Supermarket. (See Complaint, ¶ 20).

9. On or about November 2008, Stephan sued those entities in the matter entitled The STEPHAN COMPANY vs. MEXICAN SUPERMARKET, INC., IMPORT MEX DISTRIBUTORS, INC., SECOBASA MEXICAN GROCERIES, LLC and SOUTH TEXAS GROCERY, LLP, Case No. 08-61833 in the United States District Court, Southern District of Florida. (See Complaint, ¶ 21).

10. On or about January 26, 2009, a Stipulated Order of Permanent Injunction was entered against Defendant Import Mex Distributors, Inc., permanently enjoining that entity from infringing on Stephan's Wildroot® trademark. (See Complaint, ¶ 22).

11. On or about March 25, 2009, a Stipulated Order of Permanent Injunction was entered against Defendant Mexican Supermarket, Inc., permanently enjoining that entity from infringing on Stephan's Wildroot® trademark. (See Complaint, ¶ 23).

12. On or about August 25, 2009, Stipulated Order of Permanent Injunctions were

entered against Defendants Secobasa Mexican Groceries, LLC and South Texas Grocery LLP permanently enjoining those entities from infringing on Stephan's Wildroot® trademark. (See Complaint, ¶ 24).

13. During that action, Stephan discovered that one of the entities, Secobasa Mexican Groceries, LLC was buying from a wholesaler in Mexico, Defendant SAHUAYO, who, upon information and belief, had knowledge of Stephan's Wildroot® trademark in the United States and sold Colgate's Wildroot® to these entities in the United States intentionally infringing Stephan's Wildroot® trademark. (See Complaint, ¶ 25).

14. Colgate was informed of this situation by correspondence dated April 27, 2009. (See Complaint, ¶ 26).

15. Upon information and belief Colgate has supplied, and continues to supply, its Mexican Wildroot® product to the Mexican market, and to Defendant SAHUAYO, whom Colgate knows or has reason to know is engaging in infringement of Stephan's Wildroot® as a result of Stephan's correspondence to it that these Mexican Wildroot® products are being illegally diverted to the U.S. by Defendant SAHUAYO and possibly other distributors and importers. (See Complaint, ¶ 27).

16. Upon information and belief, Colgate has actual knowledge of, or should have known, that certain retailers in the U. S. are selling illegally imported Wildroot® products diverted from the Mexican market, through SAHUAYO and Colgate, upon information and belief, is assisting those retailers of Wildroot® products in the U.S.,

        namely Secobasa Mexican Groceries, LLC and others, to take advantage of an opportunity to illegally substitute Colgate's materially different Mexican Wildroot® product for Stephan's Wildroot® product. (See Complaint, ¶ 28).

17.    In view of the foregoing activities, Defendants are infringing upon Stephan's U.S. trademark rights in Wildroot®, and/or is intentionally contributing to and/or intentionally inducing and assisting the distributors as well as certain retailers to illegally import and infringe, dilute and otherwise unfairly compete with Stephan in the U.S. by importing and selling, or inducing the importation, sale and distribution of, infringing and/or counterfeit and/or illegal gray market goods bearing the trademark. (See Complaint, ¶ 29).

In any event, the facts alleged in the First Amended Complaint are sufficient to state claims that Colgate infringed on Stephan's Wildroot® trademark, violated the federal unfair competition statute pursuant to 15 U.S.C. §1125 (a) and violated the 15 U.S.C. § 1124 by the illegal importation of goods bearing infringing marks. As a result, Colgate's Rule 11 Motion should be denied.

## ARGUMENT

### I. STEPHAN HAS SUFFICIENTLY PLEAD ITS CLAIMS

It is nothing short of incredible, based on the facts as alleged in the First Amended Complaint, that Colgate has moved for Rule 11 sanctions for failure to state a claim for trademark infringement.

Under Rule 11, sanctions are only proper (1) when a party files a pleading that has no

reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and cannot be advanced as a reasonable argument to change existing law; or (3) when a party files a pleading in bad faith for an improper purpose." Massengale v. Ray, 267 F.3d 1298, 1301 (11th Cir. 2001).

None of these circumstances apply. In fact, as stated in its response to Colgate's Motion to Dismiss, Stephan has stated a claim for contributory trademark infringement. In its First Amended Complaint, Stephan has alleged facts that would show that Colgate either (1) intentionally induced a third party to engage in direct infringement; or (2) continued to supply its product to one whom it knows or has reason to know is engaging in trademark infringement. Inwood Labs., Inc., v. Ives Labs, Inc., 456 U.S. 844, 854 (1982); Monsanto Co. v. Campuzano, 206 F. Supp. 2d 1271, 1274 (S.D. Fla. 2002) (citing Inwood); see also Optimum Techs, Inc. V. Henkel Consumer Adhesives, Inc., 496 F.3d 1231, 1245 (11th Cir. 2007). And, as set forth above, Colgate has done it before.

Stephan has sufficiently alleged in its First Amended Complaint that Colgate had knowledge that SAHUAYO was infringing on Stephan's trademark and even after being notified of such actions, continued to supply Wildroot to SAHUAYO. Stephan has alleged that it first started its search for the infringing parties when it discovered that Mexican Wildroot® was being sold in a supermarket in its own backyard in Florida. As a result, Stephan sued several entities, Mexican Supermarket, Inc., Import Mex Distributors, Inc., Secobasa Mexican Groceries, Inc. and South Texas Grocery LLP, who were all "buying Wildroot® from wholesale suppliers in Mexico and selling Wildroot® in the United States and in this District, illegally importing Colgate's Wildroot® product intended for sale in the Mexican market into the U. S. for resale by certain U.S. retail

outlets." (See Complaint, ¶ 21). Permanent Injunctions have previously been entered against all these entities to prevent them from infringing on Stephan's Wildroot® trademark in the future. (See First Amended Complaint, ¶ ¶ 22-24). Copies of the Permanent Injunctions are attached to Mr. Ferola's affidavit.

It was during that earlier action that Stephan discovered that Secobasa Mexican Groceries, LLC was buying from a wholesaler in Mexico, Defendant SAHUAYO, who, upon information and belief, had knowledge of Stephan's Wildroot® trademark in the United States and had sold Colgate's Wildroot® to these entities in the United States thus intentionally infringing Stephan's Wildroot® trademark. (See First Amended Complaint, ¶ 25). This allegation specifically states that SAHUAYO is responsible for selling Mexican Wildroot® to entities in the United States.

Stephan then alleges that Stephan informed Colgate of this situation by correspondence dated April 27, 2009.[1] (See First Amended Complaint, ¶ 26). This statement is not conclusory. Colgate was told that SAHUAYO, a distributor, had knowledge of Stephan's Wildroot® trademark in the United States and continued to sell the Colgate Mexican Wildroot® to Secobasa Mexican Groceries, LLC in the United States. These factual allegations are sufficient to make it clear that Colgate had knowledge of the infringement.

---

[1] Various emails are attached to Mr. Ferola's affidavit to demonstrate that Colgate was informed of the infringing activity as required by the Settlement Agreement. Colgate was also advised by Stephan of the situation with SAHUAYO by correspondence serving a subpoena upon Colgate asking for any and all documents relative to SAHUAYO, the known infringer, in Case No. 08-61833. Colgate never responded to the subpoena, and did not provide the documentation as requested. A copy of the subpoena is also attached to the Affidavit of Frank Ferola, filed simultaneously with this response.

Stephan further alleges that, upon information and belief, Colgate has supplied, and continues to supply, its Mexican Wildroot® product to the Mexican market, to Defendant SAHUAYO, whom Colgate knows or has reason to know is engaging in infringement of Stephan's Wildroot® trademark as a result of Stephan's correspondence to it that these Mexican Wildroot® products are being illegally diverted to the U.S. by Defendant SAHUAYO. (See First Amended Complaint, ¶ 27).

Whether Colgate or Colgate Mexico manufactured and/or supplied the Mexican Wildroot® for sale in the United States does not matter under these facts. An affiliate can be vicariously viable for trademark infringement to the extent that it has joint ownership or control over the infringing product. Indeed, the settlement agreement in the earlier litigation defined Colgate to include Colgate Mexico, its subsidiary, and that provides evidence of Colgate's control over Colgate Mexico. See RGS Labs Int'l, Inc., v. The Sherwin-Williams Co., 2010 WL 317778 (S. D. Fla) (upholding a vicarious liability trademark infringement claim on a motion to dismiss) see also David Berg & Co., v. Gatto Int'l Trading Co., 884 F.2d 306, 311 (7th Cir. 1989); Mini Maid Servs. Co. v. Maid Brigade Sys., Inc., 967 F.2d 1516, 1522 (11th Cir.1992) (doctrine could hold franchisor liable for infringing actions of its franchisee when "franchisor explicitly or implicitly encouraged the trademark violations"); Hard Rock Café Licensing Corp. v. Concession Servs., Inc., 955 F.2d 1143, 1149 (7th Cir.1992) (landlord of flea market could be liable for its tenant's sale of an infringing product where the landlord is found to have been "wilfully blind" to the infringing acts).

As alleged by Stephan and admitted by Colgate, Colgate retains ownership to the Wildroot® trademark rights in Mexico. To the extent Colgate was notified that its own affiliate, Colgate Mexico, was supplying product to a known infringer, Colgate can be held vicariously liable for such

infringement. Colgate has not submitted any declarations or affidavits that deny that it has control or ownership of the Mexican Wildroot®. Indeed the settlement agreement in the prior litigation proves otherwise.

Stephan, therefore, has plead sufficient facts in its First Amended Complaint to state a claim for relief that is plausible on its face. Therefore, it is respectfully submitted that based upon the foregoing, Colgate's Rule 11 Motion should be denied in its entirety.

## II. STEPHAN HAS ADDED ALL NECESSARY PARTIES, INCLUDING COGATE

Although Colgate does not raise it specifically in its Rule 11 Motion, it has argued that Stephan has not joined all necessary parties in its Motion to Dismiss the First Amended Complaint.

In an abundance of caution, Stephan addresses that issue here once again. A motion to dismiss for failure to join indispensable parties is governed by the joinder requirements of Rule 19, which involves a two step process. 3A J.W. Moore & J.D. Lucas, Moore's Federal Practice 19.07-1[0] at 19-20 (2d ed. 1985). In Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 118, 88 S.Ct. 733, 742 (1968), the Supreme Court determined that Rule 19 is not a mechanical formula. It is a flexible analysis of the facts pertaining to each case. The Court is vested with substantial discretion in making the determination. Envirotech Corp. v. Bethlehem Steel Corp., 729 F.2d 70, 75 (2d Cir.1984).

Stephan has added all necessary parties under Rule 19 to allow complete relief for all the existing parties. Stephan has alleged that Colgate has sold products to SAHUAYO and that in turn SAHUAYO has sold products to Secobasa Mexican Groceries, LLC in the United States in violation of Stephan's trademark rights. Stephan has identified all direct infringers in that chain of events and

Stephan v. Colgate Palmolive
Case No.: 10-CV-61288-COOKE

as a result, complete relief can be awarded as is. See <u>Swerhun v. General Motors Corp.</u>, 141 F. R.D. 342, 347 (M.D.Fla. 1992). Moreover, Stephan has sought leave to amend its First Amended Complaint to include Colgate Mexico as a party. See Fed.R.Civ.P. 15(a). In any event, all the proper parties are before this Court for injunctive relief.

**WHEREFORE**, Plaintiff respectfully requests that the Court deny Defendant's Motion for Sanctions, and grant such other and further relief as to this Court may seem just and proper.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th [th] day of February, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to the following:

Jonathan Galler, Esq.
Matthew Triggs, Esq.
Payal Salsburg, Esq.
Proskauer, Rose, LLP
2255 Glades Road
Suite 340 West
Boca Raton, Florida 33431

Brendan J. O'Rourke, Esq.
Gerald W. Sawczyn, Esq.
Dolores F. DiBella, Esq.
Adam Siegartel, Esq.
Proskauer Rose, LLP
1585 Broadway
New York, NY 10036

            **BERMAN, KEAN & RIGUERA, P.A.**
            Attorneys for the Plaintiff
            2101 W. Commercial Blvd.
            Suite 2800
            Fort Lauderdale, FL 33309
            Telephone: (954) 735-0000

Stephan v. Colgate Palmolive
Case No.: 10-CV-61288-COOKE

Facsimile: (954) 735-3636

By:     //s//Richard E. Berman
    Richard E. Berman
    Florida Bar No.: 254908
    Reb@bermankean.com
    Brian J. McCarthy
    Florida Bar No. 668710
    Bjm@bermankean.com

\\Server-MS\REBData\ProlawDocs\Stephan Co., The\1718-003\Attached Document\55119.wpd