UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-CV-61288-COOKE/BANDSTRA

THE STEPHAN CO.,

    Plaintiff,

        vs.

COLGATE-PALMOLIVE COMPANY and
ORGANIZACION SAHUAYO, S.A. DE C.V.,

    Defendants.

---

**DEFENDANT COLGATE-PALMOLIVE COMPANY'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

February 22, 2011

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 1

1. Stephan Did Not Have A Reasonable Basis For Naming Colgate In This Lawsuit .......... 2
   - A. Colgate's Inclusion In The Prior Suit And Settlement Is Irrelevant Because Stephan's Claims And The Background Facts Were Very Different .......... 2
   - B. Stephan's Correspondence To Colgate 1-2 Years Before Filing Suit Does Not Justify Colgate's Inclusion In This Suit .......... 3
   - C. Stephan's Belated Attempt To Name Additional Defendants Is Irrelevant .......... 5
   - D. Colgate's Affiliate Relationship With Colgate Mexico Is Insufficient .......... 6
2. Colgate's Consent To The Filing Of The First Amended Complaint Does Not Weaken Colgate's Motion .......... 8
3. Stephan Ignores Its Abandoned Allegation Regarding Colgate "Distribution Volumes" .......... 9
4. Stephan's First Amended Complaint Is Not Factually Sufficient .......... 10

CONCLUSION .......... 10

**PRELIMINARY STATEMENT**

In its opposition to this sanctions motion, The Stephan Company ("Stephan") emphasizes events that took place approximately seven years ago. This is a curious strategy considering that Colgate-Palmolive Company's ("Colgate's") motion is based on events that took place no more than roughly *seven months ago*. Stephan, however, has no choice but to focus on irrelevant events from the distant past, because its behavior since it filed this litigation in July 2010 has been indefensible and merits sanctions.

Stephan's primary argument is that Colgate previously infringed Stephan's trademark rights in 2003-04 and that fact immunizes Stephan's behavior many years later. To support its unsubstantiated claim of prior infringement, Stephan presents snippets of a redacted 2004 settlement agreement between the parties. *See* Affidavit of Frank Ferola Submitted in Support of Stephan Opposition (the "Ferola Affidavit"), Ex. A (the "Settlement Agreement"). Stephan claims that this settlement demonstrates that the instant litigation "is not the first time that Colgate has infringed on Stephan's Wildroot trademark," and that "Colgate has done it before." *See* Stephan Opp. at 1, 9.

Stephan's position is squarely rebutted by those portions of the Settlement Agreement that Stephan conveniently omitted. Paragraph 8 of the Settlement Agreement unequivocally instructs that "[i]t is understood and agreed that this Settlement Agreement and Release represents a compromise of disputed claims, *and is not and shall not be construed as an admission or concession of liability or wrongdoing on the part of any party hereto*." *See* February 22, 2011 Declaration of Adam D. Siegartel (the "Siegartel Declaration"), Ex. 1, ¶ 8 (Settlement Agreement; emphasis added). A recital clause earlier in the Agreement makes it equally clear that Colgate did not concede liability: "Colgate denies the claims and contentions brought by Stephan in the Action and continues to deny any wrongdoing or any legal liability of any kind arising out of the facts alleged in the Action." *See id.* at 1. Parties will of course settle cases for a variety of reasons

regardless of substantive merit, and thus it is not at all surprising that another recital in the Settlement Agreement instructs that "Stephan and Colgate (collectively the 'Parties') wish to settle and compromise the claims between and among themselves . . . in order to avoid the time, expense, and distraction of protracted litigation." *See id.*

Clearly, therefore, the parties' prior litigation and settlement do not provide a reasonable basis for the current lawsuit. The parties' amicable resolution seven years ago is irrelevant, and when Stephan's consistent pattern of behavior since July 2010 is examined objectively, it is inescapable that Stephan's pleadings have no reasonable factual basis, no reasonable chance of success, and were filed improperly and in bad faith. To the extent that the parties' prior settlement is relevant at all, it is to illustrate exactly why Stephan would have been motivated to embroil Colgate in this baseless lawsuit, namely, with the hope that Colgate would once again amicably resolve this matter before Stephan was forced to stand up in court and defend its allegations.

For this and the other reasons discussed herein and in Colgate's initial moving papers, Stephan's First Amended Complaint (the current operative pleading) should be struck with prejudice, Colgate should be awarded its attorneys' fees and expenses associated with moving against the First Amended Complaint and filing this Motion, and this Court should grant such other and further relief as it deems just and proper. Stephan's secondary arguments are equally baseless and will be examined in turn.

1. **Stephan Did Not Have A Reasonable Basis For Naming Colgate In This Lawsuit**

   A. Colgate's Inclusion In The Prior Suit And Settlement Is Irrelevant Because Stephan's Claims And The Background Facts Were Very Different

In its initial moving papers, Colgate listed many facts indicating that Stephan has not proceeded in good faith and is simply looking for a quick payout. One such fact is Stephan naming Colgate alone as the initial defendant despite Colgate's clear lack of involvement with the

relevant allegations.  Stephan's primary response in opposition is that naming Colgate as the sole defendant was justified because Colgate was a party to the prior lawsuit and settlement agreement.

Stephan, however, ignores that the prior lawsuit had unique facts *not* present here. Specifically, the prior lawsuit included a claim that Colgate had breached the 1995 contract between Colgate and Stephen in which Stephan purchased the U.S. rights to the WILDROOT trademark.  *See* Siegartel Declaration, Ex. 2, at ¶¶ 14, 30-31 (Stephan August 2003 Complaint). The First Amended Complaint includes no breach of contract claim.  [DE 23]

Colgate's involvement in the resulting settlement was also necessary because at that time, Stephan still owed Colgate a significant amount of money stemming from the 1995 trademark purchase.  As explained in a 2003 declaration from Colgate's Vice President/Corporate Comptroller in support of Colgate's motion to dismiss Stephan's 2003 complaint, Stephan had already missed one payment to Colgate due roughly two months prior, and a second payment of more than *$1 million* was due within several months after that declaration.  *See* Siegartel Declaration, Ex. 3, at ¶ 5 (2003 Hickey Declaration).  Stephan's financial obligations to Colgate at the time of the prior suit and settlement necessitated Colgate being a party to that settlement.  This time there are no financial obligations and no reason for Colgate's involvement, other than Stephan's desire to sue that entity that it believes has the deepest pockets.  This is exactly the kind of behavior that merits sanctions.

    B.  <u>Stephan's Correspondence To Colgate 1-2 Years Before Filing Suit Does Not Justify Colgate's Inclusion In This Suit</u>

To support its claim that it had a reasonable basis for alleging that Colgate was a contributory infringer, Stephan also submits several items of correspondence that Stephan purportedly sent to Colgate in mid-2008 and 2009, long before Stephan sued Colgate in July 2010. *See* Ferola Affidavit, Exs. B, D; Stephan stand-alone Ex. B.  However, Stephan concedes in its opposition that this correspondence was *not* sent because Stephan reasonably believed Colgate was

3

liable, but because Stephan was obligated to notify Colgate before filing suit against any third-parties based on Colgate's alleged sale of Mexican Wildroot product in the U.S.  *See* Stephan Opp. at 10 n. 1 ("Various emails are attached to Mr. Ferola's affidavit to demonstrate that Colgate was informed of the infringing activity *as required by the Settlement Agreement*") (emphasis added). And indeed, Stephan concedes (Opp. at 6 ¶ 9, and at 9) that it sued those alleged direct infringers in November 2008 after the first of the purported notifications to Colgate.

Stephan's argument also fails because *none* of the correspondence that Stephan attaches – the 2009 subpoena that Stephan allegedly served, the cover letter to that subpoena, etc. – give the slightest indication that any third-party direct infringement was occurring *as a result of anything that Colgate had done*.  Stephan's realization that this correspondence is irrelevant is indicated by the fact that nothing except a vague "correspondence dated April 27, 2009" was even mentioned in the First Amended Complaint (at ¶ 26).  To the extent that Stephen was attempting to identify the April 2009 subpoena cover letter attached to the Ferola Affidavit, the letter merely states that "certain organizations have been engaged in the illegal importation, sale, marketing, distribution and use in the United States of products from Mexico" that infringe on Stephan's trademark rights. *See* Ferola Affidavit, Ex. D.  In turn, the enclosed subpoena consists of five innocuous document requests seeking information concerning Colgate's interactions with Organizacion Sahuayo, S.A. De C.V. ("Sahuayo"). *See id.*  Not only is there not the slightest hint of Colgate wrongdoing, but there is nothing indicating that Sahuayo had sold Mexican Wildroot product to any of the defendants.

In sum, this correspondence, all from 1-2 years before Stephan even sued Colgate, is a smokescreen, and could not have provided Stephan with a reasonable basis for alleging that Colgate was a sufficiently knowledgeable contributory infringer.[1]

---

[1] Colgate also does not accept Stephan's argument that Stephan satisfied its notice obligations under the

C. <u>Stephan's Belated Attempt To Name Additional Defendants Is Irrelevant</u>

Stephan also tries to justify its inclusion of Colgate by pointing out that it named Sahuayo as a defendant in its First Amended Complaint, and has sought leave to name Colgate-Palmolive S.A. De C.V. ("Colgate Mexico") in a Second Amended Complaint (Colgate has opposed this pending motion for leave). Of course, Stephan's attempts to name additional defendants who are allegedly closer to the background facts does not justify also naming Colgate, an entity that has nothing to do with the background facts. Furthermore, although Sahuayo is technically a named defendant, its role in this lawsuit is an obvious ruse, considering that *Stephan has apparently still not served Sahuayo with the First Amended Complaint – or even attempted to do so – despite that complaint being filed approximately five months ago*.[2]

Stephan's belated attempt to name Colgate Mexico also should not save Stephan. As the alleged owner of the WILDROOT mark in the U.S., Stephan undoubtedly knew before it filed suit that Colgate Mexico was the entity responsible for the sale and distribution of Wildroot product in Mexico. And if there was any doubt, Colgate made that fact explicitly clear when it filed its motion to dismiss Stephan's initial complaint in August 2010. Colgate filed a declaration from Colgate's Director of U.S. Supply and Demand Planning that stated unequivocally that "*Colgate does not distribute or sell WILDROOT products in Mexico, and does not manage the distribution or sale of such products in Mexico*" and that instead, Colgate Mexico was responsible for the distribution and sale of WILDROOT products in Mexico. [DE 19 Ex. 1 at ¶ 2 (Declaration of Chris Miller)

---

Settlement Agreement before suing Colgate. See Stephan Opp. at 10 n.1; *see also id.* at 2 (quoting Settlement Agreement notice provision). Colgate reserves all rights in this regard. Regardless, even if Stephan did satisfy its obligation to *notify Colgate* under the 2004 Settlement Agreement, this is a separate issue from whether Stephan had a reasonable basis to *name Colgate* as a contributory infringer six years later.

[2] Stephan alleges that Mexican Wildroot product was sold to Sahuayo, and that Sahuayo has sold that product to the direct infringers in the U.S. *See* Stephan Opp. at 9-11. Sahuayo has never alleged that any Colgate entity sold Mexican Wildroot product to the direct infringers in the U.S.

(emphasis added)]  Stephan did not file its First Amended Complaint until roughly one month *after* Colgate filed this declaration, and yet Stephan still did not try to join Colgate Mexico at that time. Colgate's inclusion in this litigation and Colgate Mexico's simultaneous exclusion is inexcusable, indicates bad faith, and supports the imposition of sanctions.[3]

### D.  Colgate's Affiliate Relationship With Colgate Mexico Is Insufficient

Finally, Stephan argues that Colgate is a proper defendant because Colgate and Colgate Mexico are affiliates, and an affiliate can be vicariously liable for trademark infringement "to the extent that it has joint ownership or control over the infringing product."  *See* Stephan Opp. at 11.  As Stephan would have known if it had conducted a reasonable investigation before filing suit, Stephan's argument is both factually and legally incorrect.  As a factual matter, Colgate's prior declaration makes clear that Colgate does not exercise joint ownership or control over Mexican Wildroot product.  The most that Stephan can muster to support its theory is that Colgate is the formal owner of the WILDROOT mark in Mexico (*id.*).  Stephan, however, is incorrect – Colgate is *not* the formal owner of the WILDROOT trademark registration in Mexico, and Stephan's argument (*id.*) that Colgate previously conceded that fact is incorrect.  *See* Siegartel Declaration, Ex. 4 (Mexican Trademark Office records for WILDROOT trademark registrations). Furthermore, if formal trademark ownership was sufficient for vicarious liability, then every franchisor would automatically be exposed for its franchisees' infringing conduct.  As Stephan's own case holds, that is not the law.  *See Mini Maid Servs. Co. v. Maid Brigade Sys., Inc.*, 967 F.2d 1516, 1520-22 (11th Cir. 1992) (cited in Opp. at 11).

---

[3] In light of this declaration, Stephan is also clearly wrong when it argues in its opposition that "Colgate has not submitted any declarations or affidavits that deny that it has control or ownership of the Mexican Wildroot."  *See* Stephan Opp. at 12.

6

Furthermore, although Stephan (at 11) purports to cite caselaw holding that an entity can be liable for its affiliate's contributory infringement, *Stephan does not cite a single case* in which an affiliate relationship was held sufficient to support a claim for vicarious trademark infringement. Rather, Stephan's cited cases reject the application of vicarious liability based on the existence of various corporate relationships and re-affirm that the Supreme Court's *Inwood* decision highlighted in Colgate's pending motion to dismiss [DE 28 at 10-11] provides the controlling standard for secondary liability, a standard that Stephan has not come close to meeting here.[4]

Stephan's final argument that the settlement agreement "proves" that Colgate controls Colgate Mexico because the agreement "defined Colgate to include Colgate Mexico" is also frivolous. *See* Stephan Opp. at 11-12. The inclusion of Colgate's parent corporations, subsidiaries, and affiliates, among others, within the scope of the settlement agreement is standard language designed to ensure the finality of the settlement. The fact that Stephan freely chose to settle any claims it may have had against Colgate's affiliates does nothing to prove that Colgate exercises "control" over Colgate Mexico, or that Stephan acted properly or in good faith when it named Colgate as a defendant in this new lawsuit. Indeed, Colgate and Stephan are both defined in the Settlement Agreement as including their respective parents (at ¶¶ 1.a and 1.b), but Stephan would be hard-pressed to argue that a subsidiary controls its corporate parent.

---

[4] Regarding the cases that Stephan cited, *see Hard Rock Cafe Lic. Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1149-50 (7th Cir. 1992) (rejecting application of vicarious trademark infringement liability in context of flea market operator-vendor relationship and holding that "the *Inwood Labs.* test for contributory liability applies"); *Mini Maid Servs. Co. v. Maid Brigade Sys., Inc.*, 967 F.2d at 1520-22 (rejecting vicarious liability theory predicated on franchisor-franchisee relationship and holding *Inwood* governed); *David Berg & Co. v. Gatto Int'l Trading Co.*, 884 F.2d 306, 312 (7th Cir. 1989) (no vicarious liability based on membership in distribution chain and no secondary liability where *Inwood* not satisfied).

7

## 2. Colgate's Consent To The Filing Of The First Amended Complaint Does Not Weaken Colgate's Motion

Stephan argues that Colgate's motion must be denied because Colgate consented to the filing of the First Amended Complaint in the parties' October 2010 joint motion.  *See* Stephan Opp. at 4 ("Colgate cannot now move for Rule 11 sanctions on the very pleading that it agreed Stephan could file").  Stephan's argument of course ignores those many aspects of Colgate's motion that do not concern the substantive weaknesses of the First Amended Complaint – for example, Stephan's repeated missed filings and dilatory conduct.  [DE 36 at 1, 2, 5]  More fundamentally, however, Stephan does not provide a single legal cite to support its quasi-estoppel argument, and the background facts directly contradict Stephan as well.

Most critically, Colgate has always unequivocally reserved the right to challenge the First Amended Complaint, including in the joint motion itself.  The joint motion included multiple explicit statements that Colgate would potentially move against the First Amended Complaint.  [DE 25 at 1 (preamble), ¶¶ 8, 9(4)]  And indeed, in accordance with that joint motion, Colgate filed its motion to dismiss the First Amended Complaint shortly thereafter.  [DE 28]

Stephan's argument also ignores the procedural history leading up to the parties' joint motion.  The joint motion was filed *after* Stephan missed its deadline to oppose Colgate's initial motion to dismiss and instead filed a First Amended Complaint that was also untimely.  In the joint motion the parties expressly stated that the motion was "an effort to avoid motion practice to strike this untimely First Amended Complaint . . . without the court's intervention." [DE 25 at 2, ¶ 7] Colgate should not be punished for trying to preserve judicial resources, especially in light of Stephan's critical concession in the joint motion that Colgate's initial motion to dismiss was meritorious and dismissal of Stephan's first complaint was warranted.  *See id.* at 1, ¶ 7.  Stephan's

8

argument would also produce the absurd result that Colgate is precluded from challenging the claims and allegations in the First Amended Complaint.  That of course cannot be the case.

In sum, Colgate has never compromised its ability to challenge the substance of the First Amended Complaint or Stephan's underlying motivations for filing that document.  Stephan's attempt to pin the blame on Colgate for Stephan's inexcusable behavior should be rejected.

3. **Stephan Ignores Its Abandoned Allegation Regarding Colgate "Distribution Volumes"**

One of the most blatant indications that Stephan proceeded in bad faith and without reasonable diligence is Stephan's allegation in its initial complaint that Colgate had the requisite knowledge for contributory infringement based on the quantities of Mexican Wildroot product that Colgate was selling in Mexico.  [Ex. A to DE 1 at ¶ 21]  When Stephan filed its First Amended Complaint approximately three months later, this allegation was gone, replaced by the radically different but equally formless allegation that Colgate had the necessary knowledge because "Colgate was informed of this situation by correspondence dated April 27, 2009."  [DE 23 at ¶ 26]  Although Colgate emphasized Stephan's about-face in its moving papers [DE 36 at 5-6], Stephan *completely ignores* this fact in its opposition.  Stephan's silence regarding this fundamental issue is notable because the basis for Colgate's alleged knowledge of direct infringement is a critical aspect of Stephan's case and not something that Stephan ever had the right to take lightly.

Stephan's lack of a reasonable inquiry before filing suit and its filing of a pleading with no reasonable basis in law or fact is sufficient standing alone to merit sanctions; Stephan, however, exacerbated its initial defect when it adopted its entirely new but equally baseless "April 2009" theory in the First Amended Complaint.  As the caselaw cited in Colgate's initial moving papers make clear (at 7), this is also exactly the type of behavior that warrants Rule 11 sanctions.[5]

---

[5] Stephan's lack of a reasonable investigation before filing suit is also evidenced by its inclusion of a claim for

9

### 4. **Stephan's First Amended Complaint Is Not Factually Sufficient**

As in Stephan's other motion filings, Stephan copies and pastes broad swaths of its First Amended Complaint into its Rule 11 opposition (at 5-8) in an attempt to convince the Court that this pleading was sufficiently detailed and in good faith (more than one-quarter of Stephan's opposition is copied verbatim from the First Amended Complaint). Quantity, however, is not commensurate with quality, and Colgate has already explained in its motion to dismiss the First Amended Complaint why Stephan's cursory and vague allegations cannot withstand Rule 12 scrutiny. [DE 28 at 8-15 (motion); DE 32 at 4-9 (reply)] In its initial Rule 11 motion papers, Colgate also explained why these allegations are so deficient as to warrant sanctions. [DE 36 at 1, 6, 8-10] Colgate will not repeat its arguments again and respectfully refers the Court to its prior discussions.[6]

### **CONCLUSION**

For all of the reasons discussed above and in Colgate's initial moving papers, Stephan's claims lack evidentiary support, are objectively frivolous as a matter of law and fact, and are part of a pattern of dilatory conduct designed to harass Colgate in the hope that Colgate will settle this case and provide Stephan with a quick monetary settlement. Colgate respectfully requests that the Court (1) strike, with prejudice, Stephan's First Amended Complaint, (2) award Colgate its attorneys' fees and expenses associated with moving against the First Amended Complaint and filing this Motion, and (3) grant such other and further relief as this Court deems just and proper.

---

"Interference with Prospective Business Advantage" in its initial complaint. [Ex. A to DE 1 at ¶¶ 37-38] When Stephan filed its First Amended Complaint just two months later, Stephan *deleted* that claim entirely, a clear indication that Stephan realized it had no merit. [DE 23] Stephan was obligated, however, to make that determination *before* it filed its initial complaint, and before, for example, Colgate went through the time and expense of moving to dismiss that claim in its initial motion to dismiss (the motion to which Stephan never responded and later conceded should be granted in its entirety). [DE 19 at 11-13; DE 25]

[6] In its Rule 11 opposition (at 12-13) Stephan also repeats its prior arguments regarding why the First Amended Complaint need not be dismissed for failure to join indispensable parties. Colgate has already addressed the shortcomings in Stephan's position in its motion to dismiss and respectfully refers the Court to those prior discussions as well. [DE 28 at 15-20; DE 32 at 9-10]

Dated:  February 22, 2011

        PROSKAUER ROSE LLP

        By: <u>s/Matthew Triggs</u>
            Matthew Triggs, Esq.
            Florida Bar No. 0865745
            Payal Salsburg, Esq.
            Florida Bar No. 0057038

2255 Glades Road, Suite 421 Atrium
Boca Raton, FL 33431
(561) 241-7400

Brendan J. O'Rourke, Esq. (*pro hac vice*)
Adam D. Siegartel, Esq. (*pro hac vice*)
Gerald W. Sawczyn, Esq. (*pro hac vice*)
Eleven Times Square
New York, New York 10036
(212) 969-3000

*Attorneys for Defendant*
*Colgate-Palmolive Company*

## CERTIFICATE OF SERVICE

I, Matthew Triggs, an attorney associated with the law firm Proskauer Rose LLP, hereby certify that on February 22, 2011, I caused a true and correct copy of Defendant Colgate-Palmolive Company's Reply Memorandum Of Law In Further Support Of Motion For Sanctions Pursuant to Fed. R. Civ. P. 11 to be served via ECF upon the counsel for plaintiff, Richard E. Berman, Esq., Berman, Kean & Riguera, P.A., 2101 W. Commercial Blvd., Suite 2800, Fort Lauderdale, FL 33309.

Dated:  February 22, 2011

                                                                                            s/Matthew Triggs
                                                                                             Matthew Triggs